UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN REDMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| YACHTING SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**
**(AND DEMAND FOR JURY TRIAL)**

Plaintiff, John Redmond, by and through the undersigned counsel complains against Defendant Yachting Solutions, LLC as follows:

**JURISDICTION**

1. This matter is brought under the Jones Act. Pursuant to 28 U.S.C. § 1333 and 46 U.S.C. §668(a), this Court has jurisdiction.

2. At all times pertinent hereto, Plaintiff has been a citizen of the United States and has been a resident of the Town of Kennebunkport, County of York, State of Maine.

3. Defendant is a limited liability corporation organized and existing under the laws of the State of Maine. It maintains its principal place of business in the City of Rockport, County of Knox, State of Maine.

4. Although Defendant is based out of Rockport, Maine, it also has business locations in Rockland, Maine and Camden, Maine.

5. Defendant provides its customers and clients a myriad of services related to boating and boat ownership, including sales, maintenance, docking, and storage. Defendant also

provides safety and boat protection services to its clients in the event of an emergency and in preparation for inclement weather.

## JURY DEMAND

6. Plaintiff demands trial by jury of all claims, to the extent allowed by law.

## FACTS

7. Defendant hired Plaintiff John Redmond ("Plaintiff Redmond") on May 20, 2014, to be its Captain and Crew Service Logistics Manager, a full-time, year-round position. Plaintiff Redmond's first day of work was June 30, 2014.

8. In his capacity as a Head Captain for Defendant, Plaintiff Redmond's primary work duties consisted of captaining private boats owned by Defendant's clients in the Atlantic Ocean. Plaintiff Redmond performed these duties at Defendant's direction.

9. Plaintiff Redmond spent roughly 80% of his work time performing tasks associated with captaining private boats owned by Defendant's clients. Occasionally he would also perform maintenance on boats.

10. By virtue of his job responsibilities for Defendant, Plaintiff Redmond was a seaman within the meaning of the Jones Act.

11. Many of Defendant's clients kept their boats at various locations on or about Islesboro, an island 10.5 miles northeast of Camden, Maine.

12. At its Camden location, Defendant had two boats that it owned. One was 25-feet with a fiberglass-hull and a center console with seating for multiple people. The other was a rigid-hulled inflatable boat (a "RHIB"). The RHIB had a small center console and a seat that could safely seat only the boat's driver.

13. Defendant did not provide Plaintiff Redmond with any training on how to safely operate and travel aboard the RHIB.

14. Among other things, Defendant's employees used these boats to travel to and from the private boats of Defendant's clients.

15. On August 28, 2014, Plaintiff Redmond was working for Defendant at Defendant's Camden location.

16. At 12:00 p.m. on August 28, 2014, the National Weather Service issued a High Surf Advisory that was to be in effect until 11:00 a.m. the following day. The Advisory included coastal Knox County and coastal Waldo County. Camden is in Knox County and Islesboro is in Waldo County.

17. Because of the weather, one of Defendant's clients on the north side of Islesboro contacted Defendant to request his boat be moved from his dock to his mooring. Defendant agreed to move the boat and assigned Plaintiff Redmond and a co-worker named Justin Lesage to do it.

18. Plaintiff Redmond and Mr. Lesage set out to move the boat that afternoon at approximately 2:00 p.m. The weather conditions were deteriorating and the seas were getting rougher.

19. The only boat available to Plaintiff Redmond and Mr. Lesage to make the round trip from Camden to Islesboro was the RHIB, so that is what they used.

20. The north part of Islesboro is a roughly 40 minute trip by boat from Defendant's Camden location.

21. Plaintiff Redmond and Mr. Lesage arrived in at the destination on Islesboro and moored Defendant's client's boat without incident. Once finished, they immediately set off south to return to Camden.

22. Mr. Lesage drove the boat back to Camden.

23. During the return trip the weather was deteriorating.

24. The seas were rough and the swells and the wind were coming from different directions. Making progress towards Camden harbor was difficult.

25. Because he was not driving, Plaintiff Redmond had no place to sit safely. In addition, the deck of the RHIB was small and configured such that standing in the rough seas was not possible.

26. To stabilize himself, Plaintiff Redmond sat on the RHIB's inflatable hull. He gripped the console with his right hand and held a rope in his left hand. This was the only place on the RHIB that provided Plaintiff Redmond two hand holds.

27. A short distance from Islesboro, a large wave caused Plaintiff Redmond to be thrown into the air before landing on the deck. Plaintiff Redmond suffered injuries to various parts of his body, including his left shoulder and his left knee.

28. Plaintiff Redmond and Mr. Lesage arrived back in Camden at approximately 3:45 p.m.

29. Upon return, Plaintiff Redmond reported his injuries to Defendant's employee Christina Kinney.

## COUNT 1 – NEGLIGENCE
### (Jones Act)

30. Plaintiff repeats and re-alleges paragraphs 1-29 above and incorporates them herein by reference.

31. On August 28, 2014, Defendant was negligent by instructing Plaintiff Redmond to travel to and from Islesboro in a craft that was not properly equipped for the weather conditions, including inadequate seating, inadequate deck configuration, and inadequate safety equipment.

32. Defendant was further negligent in failing to train Plaintiff Redmond to safely operate and travel aboard the RHIB upon which he was injured on August 28, 2014, and subsequently re-injured approximately two weeks later.

33. Defendant failed to train and instruct Plaintiff Redmond on the proper manner of orienting himself on the RHIB when travelling in weather and marine conditions like those he experienced on August 28, 2014.

34. It was foreseeable that Defendant's failure to train individuals, including but not limited to Plaintiff Redmond, on operating and travelling aboard its RHIB in weather and marine conditions like those Plaintiff Redmond experienced on August 28, 2014, could result in injuries like those he suffered that day.

35. Defendant knew the weather conditions were poor and were deteriorating when it instructed Plaintiff Redmond and Mr. Lesage to travel to Islesboro on August 28, 2014.

36. It was foreseeable that Defendant's RHIB, which had inadequate seating, deck configuration, and safety equipment for passengers in weather conditions like those encountered by Plaintiff Redmond on August 28, 2014, could result in injuries, including injuries like those sustained by Plaintiff Redmond.

37. Defendant owned and operated a second boat to assist its employees in performing duties similar to those it assigned to Plaintiff Redmond on August 28, 2014. Defendant failed to make this second boat available for Plaintiff Redmond, despite the fact that it would have been a safer option in the conditions that day.

38. As a direct and proximate cause of Defendant's negligence, as set forth above, Plaintiff Redmond sustained severe physical injuries.

39. As a result of the injuries that Plaintiff Redmond sustained on August 28, 2014, he suffered serious personal injuries, endured physical pain and mental suffering, sustained

permanent impairment, incurred substantial medical and hospital bills, and lost substantial wages from his employment. Plaintiff Redmond's injuries made him unable to continue running large yachts or boats, necessitating a change in occupation while he recovered.

40. In addition, Plaintiff Redmond has suffered, and will continue to suffer, pain and suffering, including, but not limited to the loss of enjoyment in life.

## COUNT II - UNSEAWORTHINESS

41. Plaintiff repeats and re-alleges paragraphs 1-40 above and incorporates them herein by reference.

42. Defendant failed to provide Plaintiff Redmond a seaworthy vessel.

43. The RHIB Defendant provided to Plaintiff Redmond was not reasonably fit to perform its intended purpose on August 28, 2014.

44. With no safe place for Plaintiff Redmond to be or sit in the rough conditions that day, the RHIB was not reasonably safe.

45. The RHIB Defendant provided Plaintiff Redmond for travel to and from Islesboro on August 28, 2014, did not have adequate seating, safety rails, safety equipment or appurtenances for more than one passenger in weather conditions like those on August 28, 2014.

46. The deck of the RHIB Defendant provided Plaintiff Redmond for travel to and from Islesboro on August 28, 2014, was not configured in a manner that allowed Plaintiff Redmond, or any passenger, to stand safely in weather conditions like those he experienced that day.

47. The unseaworthy conditions of Defendant's RHIB were a direct and proximate cause of the severe physical injuries sustained by Plaintiff Redmond on August 28, 2014.

48. As a result of the injuries that Plaintiff Redmond sustained on August 28, 2014, he suffered serious personal injuries, has endured physical pain and mental suffering, has

sustained permanent impairment, has incurred substantial medical and hospital bills, and has lost substantial wages from his employment. Plaintiff Redmond's injuries made him unable to continue running large yachts or boats, necessitating a change in occupation while he recovered.

49. In addition, Plaintiff Redmond has suffered, and will continue to suffer, pain and suffering, including, but not limited to the loss of enjoyment in life.

## COUNT III – MAINTANENCE AND CURE

50. Plaintiff repeats and re-alleges paragraphs 1-49 above and incorporates them herein by reference.

51. Plaintiff Redmond was a seaman hired by Defendant to captain boats in navigable waters off the coast of Maine.

52. On August 28, 2014, while at sea and in the course and scope of his employment with Defendant, Plaintiff Redmond sustained injuries to his body, including his left shoulder and knee on Defendant's boat.

53. Approximately two weeks later, Plaintiff Redmond re-injured the injuries he sustained on August 28, 2014. The aggravating injuries were sustained by Plaintiff Redmond while at sea and in the course and scope of his employment with Defendant.

54. Plaintiff Redmond's injuries required medical treatment, including but not limited to, numerous doctor appointments and rehabilitation services.

55. Plaintiff Redmond injuries caused him to sustain costs associated with his medical treatment, including, but not limited to, medical bills, transportation costs, and other costs of care.

56. In addition, Defendant's failure to pay maintenance and cure slowed Plaintiff's recovery, resulting in additional medical expenses and pain and suffering.

57. Defendant has not paid for Plaintiff Redmond's medical care, unreasonably denying Plaintiff of maintenance and cure.

58. Plaintiff seeks money damages for maintenance and cure in an amount to be determined at trial.

59. Plaintiff seeks reasonably attorneys' fees for unreasonable denial of maintenance and cure.

WHEREFORE, Plaintiff demands judgment against Defendant, together with interest and costs.

Dated: August 3, 2017 */s/ Samuel S. Riotte*
Samuel S. Riotte
Jeffrey L. Cohen
McTEAGUE HIGBEE
Four Union Park
P.O. Box 5000
Topsham, ME 04086
(207) 725-5581
sriotte@mcteaguehigbee.com
jcohen@mcteaguehigbee.com

*Counsel to Plaintiff*