UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN REDMOND,                        )
                                     )
            Plaintiff,               )
                                     )
v.                                   )   Docket no. 2:17-cv-00292-GZS
                                     )
YACHTING SOLUTIONS, LLC,             )
                                     )
                                     )
            Defendant.               )


**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court are Defendant's Motion for Summary Judgment (ECF No. 50), as well as two related motions to strike, Plaintiff's related Motion to Strike or Exclude the Affidavit of Anthony P. Hessert (ECF No. 55) and Plaintiff's Motion to Strike or Exclude the Affidavit of Vincent R. Jones (ECF No. 56). As explained herein, the Court DENIES all three motions.

**I.   LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is

one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. See Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (quotation marks and internal ellipsis omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation."). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the moving party." In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993). "However, summary judgment is improper when the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Morales-Melecio v. United States (Dep't of Health and Human Servs.), 890 F.3d 361, 368 (1st Cir. 2018) (quotation marks omitted).

## II.  MOTIONS TO STRIKE

Before laying out the factual summary in accordance with the standard just-described, the Court must resolve two motions to strike filed by Plaintiff: (1) the Motion to Strike or Exclude Affidavit of Anthony P. Hessert ("Hessert") (ECF No. 55), and (2) the Motion to Strike or Exclude Affidavit of Vincent R. Jones ("Jones") (ECF No. 56). By way of introduction to this evidentiary dispute, a key issue here is what activities Plaintiff performed while working for Defendant. The parties agree that Plaintiff John Redmond ("Redmond") recorded his time and activities on a daily basis utilizing time sheets provided by Defendant Yachting Solutions ("YS"), which are included in the Joint Stipulated Record as Exhibit J (ECF No. 48-10). For purposes of summary judgment, the parties also agree that these "time sheets constitute a fair and accurate record of, and stand as the best evidence of, what Redmond did and for how long he claims he did it on any given day." (Def. SMF (ECF No. 51), PageID # 457 & Pl. Resp. SMF (ECF No. 58), PageID # 531.) Jones and Hessert are YS employees who have reviewed Redmond's time sheets and their proffered testimony offers an alternative view of Redmond's YS work hours.

The Court first turns to the issue of the Jones Affidavit. Jones "assumed the responsibilities and job duties of John Redmond" after Redmond's departure. (Jones Aff. (ECF No. 53), PageID # 475.) Defendant proffers Jones' testimony regarding his "actual experience doing the same tasks" noted in Redmond's time sheets, as well as the locations and estimated distances between locations noted on these time sheets. To the extent Plaintiff argues that Jones' testimony in this regard is only admissible under Federal Rule of Evidence 702, the Court disagrees. Jones' testimony regarding time estimates for tasks he has personally performed as a YS employee is admissible under Federal Rule of Evidence 701. See 4 Weinstein's Federal Evidence § 701.03 (2019) (noting that "a number of circuits agree that lay witnesses may, consistent with Rule 701(a),

3

testify broadly regarding an employer's practices, policies, and procedures, provided their testimony is derived from personal knowledge and experience at the business").

Turning to Plaintiff's argument that the Jones Affidavit violates the "personal knowledge" requirement in Federal Rule of Civil Procedure 56(e)(1), the Court similarly disagrees. The Court reads the Jones' Affidavit as characterizing his "standard times" as "conservative estimates based upon [his] actual experience doing the same tasks." (Jones Aff., PageID #s 475-76.) This characterization meets the personal knowledge requirement for purposes of Federal Rule of Civil Procedure 56(e).

As a third basis for excluding the Jones Affidavit, Plaintiff asserts that Defendant failed to identify him as a person with discoverable information in either its Responses to Interrogatories, or its Initial Disclosures or any supplements thereto. See Fed. R. Civ. P. 26(a)(1), (e)(1) & 37(c)(1). In response to this argument, Defendant has identified six times in which Jones was identified during two separate depositions taken by Plaintiff's counsel. (See Def. Resp. (ECF No. 61), PageID # 554-55.) Defendant argues these disclosures during the discovery process excused it from further supplementation under Federal Rule of Civil Procedure 26(e)(1)(A). While the Court disagrees with Defendant on this point and views Plaintiff's complaint as a legitimate discovery violation, the Court ultimately concludes that allowing Jones' Affidavit in the context of summary judgment is harmless under Federal Rule of Civil Procedure 37(c)(1).

"The harmless inquiry involves balancing 'fairness, burden, and case management needs.'" Acadia Ins. Co. v. Cunningham, 771 F. Supp. 2d 172, 176–77 (D. Mass. 2011) (quoting Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 198 (1st Cir. 2006)). Here, the Court finds that Jones was known to Plaintiff as a potential witness given the deposition references compiled by Defendants. More importantly, in the context of Defendant's request for summary judgment, the

4

Court's consideration of the Jones Affidavit does not change the ruling on this dispositive motion. At best, Jones' testimony that a task took him less time than Redmond recorded for the same task in 2014 creates a genuine issue of material fact. Given the minimal impact on the disposition of the present motion and recognizing that the harmlessness inquiry involves an exercise of the Court's discretion, the Court DENIES Plaintiff's Motion to Strike or Exclude Affidavit of Vincent R. Jones (ECF No. 56).

Plaintiff's other Motion to Strike seeks to exclude from the summary judgment record the Affidavit of Anthony P. Hessert (ECF No. 52), who is the Chief Financial Officer and President of YS. Hessert's Affidavit explains the process by which he compiled a ten-column spreadsheet, which purports to analyze Redmond's time sheets. (See Ex. 1 to Hessert Aff. (ECF No. 52-1), PageID # 466-477.) Plaintiff argues that the Hessert Affidavit, along with the attached spreadsheet and other supporting exhibits, is subject to exclusion on multiple bases. To the extent Plaintiff seeks exclusion based on hearsay or lack of personal knowledge, the Court overrules these objections with one exception. Having allowed the Jones Affidavit, the Court finds that Hessert's Affidavit is entitled to rely on Jones' statements to the extent they are contained in his affidavit. The Court will exclude and disregard the "Marina Manager time details" contained on the right hand side of column nine. On the current record, these comments from an unidentified Marina Manager are hearsay. In all other respects, the Court agrees with Defendant that the spreadsheet is a summary of admissible evidence and therefore admissible under Federal Rule of Evidence 1006. (See Def. Response (ECF No. 60), PageID #s 546-47.)

Plaintiff alternatively argues that the Hessert Affidavit, along with the attached spreadsheet, should be excluded for discovery violations, including failing to disclose Hessert as an expert witness. The Court's analysis of these objections is similar in form and substance to the

analogous objections Plaintiff presented to the Jones Affidavit. First, the Court concludes that the time sheet summary contained in the spreadsheet falls under Federal Rule of Evidence 701. As such, there was no violation of the discovery rules regarding expert disclosures. As to Defendant's failure to identify Hessert in its Initial Disclosures and Interrogatory Responses, the Court concludes that Federal Rule of Civil Procedure's 37(c)(1)'s exclusion remedy does not apply. Rather, having balanced all of the relevant considerations, including the fact that Hessert was disclosed during at least two separate depositions and the limited impact that Hessert's Affidavit and attached exhibits have on the disposition of the pending motion, the Court finds the failure was harmless.[1]

## III. FACTUAL BACKGROUND

Defendant Yachting Solutions, LLC ("YS") is a limited liability corporation organized and existing under the laws of the State of Maine and maintains its principal place of business in Rockport, Maine. Although YS is based out of Rockport, Maine, it also has business locations in Rockland, Maine, and Camden, Maine. YS provides services related to boating and boats, including sales, docking, and storage.

In 2014, YS offered a "Summer Services program," which included a full array of care for its client's vessels, including maintenance and fueling. That summer, YS owned only two vessels (other than a small dinghy); one was 25-feet long with a fiberglass-hull ("Edgewater") and the other was a 19-foot long, rigid-hulled inflatable boat ("RHIB" or "BAT boat"). YS employees used these boats to access the private boats owned by YS clients and occasionally to transport

---

[1] As to both Jones and Hessert, the Court's harmlessness finding is limited to the pending summary judgment motion and the affidavits presented. Plaintiff is free to renew his request for exclusion under Rule 37(c)(1) via a pre-trial motion in limine or, alternatively, seek leave to re-open discovery and depose both Hessert and Jones prior to trial.

clients.[2] During the Summer of 2014, at least one of YS's clients kept a vessel in the water around Islesboro, an island in Penobscot Bay northeast of Camden, Maine.

Plaintiff John Redmond began working for YS on June 30, 2014. His position was titled, "Captain – Logistics Manager" and, in relevant part, required him to have a "current captain's license." (JSR Ex. P (ECF No. 48-16), PageID #s 404-405.) In fact, Redmond currently holds, and held at the time of his work at YS, a Merchant Mariner's Credential as a Master of Oceangoing Vessels of not more than 200 tons issued by the United States Coast Guard. The "logistics manager" portion of Redmond's position involved coordinating transportation of staff and clients, delivery of requested goods and equipment, as well as attending captain's meetings. On an almost daily basis, Redmond operated one of the two YS boats to perform his job.

In addition to using YS boats, YS has identified twenty-two client vessels that Redmond worked on during his YS tenure. (See Hessert Aff. Ex. 4 (ECF No. 52-5), PageID # 474.) YS did not own any of these twenty-two vessels at the time it sent Redmond to work on them. However, YS employees would operate or work on client vessels without any client present on the vessel. Additionally, as part of its Summer Services program, YS would provide YS employees to captain these client-owned vessels with the owner clients riding as passengers.

As previously noted, while working for YS, Redmond recorded his time and activities on a daily basis utilizing YS-provided time sheets. These time sheets constitute a fair and accurate record of what Redmond did and for how long he claims he did it on any given day. YS used Redmond's time sheets to calculate his wages and bill YS clients for services provided.

One such service, noted repeatedly on Redmond's time sheets, was a "Captain's Day" or "CD." YS paid Redmond a flat rate of $300 for each of these assignments. "Captain's Day" was

---

[2] In 2014, none of the vessels owned by YS clients exceeded 100 Gross Registered Tons.

7

a billing description and the flat rate was earned regardless of how much time Redmond actually spent onboard a customer's vessel. Generally, a "Captain's Day" assignment involved boarding the client's boat, washing it, fueling it, preparing for the client's requested itinerary, picking up clients, completing the itinerary, bringing the boat back, washing it down, putting it away, and then heading back to shore. (See Morong Dep. (ECF No. 48-7), PageID # 277.) While performing these services, Redmond would wear his company uniform bearing the YS logo. Redmond's time sheet for July 12, 2014 provides one example of a day in which Redmond worked two "Captain's Days" for two different YS client vessels.[3]

The YS "Captain's Day" designation has no bearing on, and is independent from, the calculation of sea service toward fulfilling Coast Guard licensing requirements. Under these licensing requirements, a day of sea service is any day that a mariner served upon a vessel in an assigned position in either the deck or engineering department of a vessel (not a passenger). The position may include duties such as: handling lines, being a lookout, steering the boat, and other navigational or propulsion functions. On vessels of less than 100 Gross Registered Tons, a day is considered as 8 hours unless the Coast Guard determines that the vessel's operating schedule makes this criteria inappropriate; in no case will this period be less than 4 hours.[4] Redmond used his time sheets to maintain a record of "sea time" or "sea service" and thereby facilitate renewal of his

---

[3] As reflected on both Redmond's handwritten time sheet (ECF No. 48-10) and the Hessert spreadsheet (ECF No. 52-1), Redmond did a 5.5 hour "Captain's Day" on the Destiny Bay and a 5 hour "Captain's Day" on the Seaspell. He also moved another vessel and attended a Captain's meeting for a total work day of 15.5 hours. Redmond logged only 2.5 work hours on land on July 12, 2014. See id. at PageID # 349 & PageID # 466.

[4] See 46 U.S.C. §10.107 & § 10.232; JSR Ex. F 128:7 - 129:16 & https://www.dco.uscg.mil/Portals/9/NMC/pdfs/professional_ qualifications/crediting_sea_service.pdf.

8

Merchant Mariner Credential, which was subject to renewal every five years. By his own calculations, Redmond asserts that he worked 42.5 eight-hour sea days while at YS.[5]

By way of an example of how Redmond's time sheets describe his work, on August 27, 2014, Redmond's time sheet shows he began his work day at 9:30 AM and completed work at 6:15 PM. According to Redmond, he spent the first hour of his work day at sea. Specifically, he used a YS boat to travel to a client-owned vessel on a mooring, completed ten minutes of repair work, and then traveled on a YS-owned boat to his next job, which was apparently a "Captain's Day" on a different client vessel, Destiny Bay. Redmond then spent approximately an hour and fifteen minutes unloading and folding sails on a third client-owned vessel, Prevail. He then returned to working for Destiny Bay with supplies he picked up at Home Depot. After apparently taking a one-hour break between 4 PM and 5 PM, Redmond spent the last hour and fifteen minutes of his work day doing maintenance on the YS-owned BAT boat.[6]

On August 28, 2014, Redmond worked 9.75 hours. He spent approximately four and a half of those work hours on the water. At approximately 2 PM, Redmond and a co-worker undertook to move a vessel owned by one of Defendant's clients from a dock on Islesboro to a harbor mooring a short distance from the dock. Redmond and the co-worker set out in the RHIB from Camden to move the boat.[7] Redmond operated the RHIB on the way out to Islesboro. The

---

[5] To the extent that Defendant requested that Redmond calculation of license "sea time" be stricken, the request to strike is DENIED. See Def. Reply SMF (ECF No. 62), PageID # 565. The Court acknowledges that Defendant disputes Redmond's calculation of sea time and the relevance of sea time to the legal question presented, but concludes that it is relevant and appropriate to include this calculation in the context of construing the factual record in the light most favorable to Redmond.

[6] The Court acknowledges that the parties have queued up a genuine factual dispute regarding how to account for Redmond's time on this particular day. See Pl. Resp. SMF (ECF No. 58), PageID # 536 & Def. Reply SMF (ECF No. 62), PageID # 566. The Court cannot resolve this factual dispute but generally recounts the facts in the light most favorable to Plaintiff.

[7] The trip from Camden to Islesboro on the YS RHIB would take approximately 25 minutes or longer depending on the destination, sea state, and weather.

co-worker operated the RHIB on the way back to Camden, while Redmond sat on the side of the boat. Redmond noted "rough ride" on his time sheet and reported being injured while on the RHIB on the way back to Camden from Islesboro.

Redmond ceased working for YS on September 12, 2014. Although he expected to work for YS year-round when he was hired, YS terminated Redmond in conjunction with the end of the summer season. During the 75-day period Redmond was employed by YS, he worked 60 days. Redmond maintains that on 50 of his 60 YS work days he "was at sea for some period of time." (JSR Ex. D (ECF No. 48-4), PageID # 205.) Redmond testified that in retrospect "a small portion" of his YS job was "logistical" and "the vast majority . . . over 80 percent of [his] time was actually on the water working on boats."[8] (Redmond Dep. (JSR Ex. F/ECF No. 48-6), PageID # 232.)

Within a month of leaving YS, he applied for the position of Club Manager of the Portland Yacht Club ("PYC"). Redmond worked as the PYC Club Manager from October of 2014 until November 1, 2016. He then took a position at the Kennebunk River Club as its Dockmaster, a position in which his duties are over fifty percent managerial.

## IV. DISCUSSION

The Jones Act allows any "seaman" who is injured "in the course of employment" to bring a claim "against the employer." 46 U.S.C. § 30104. The core question raised by Defendant's Motion is whether Redmond was as a "seaman" under the Jones Act in August 2014 when he sustained his injuries. As the Supreme Court has explained, "the essential requirements for seaman

---

[8] YS disputes this characterization of the time Redmond spent at sea. Based on the calculations contained in the Hessert spreadsheet, YS maintains that Redmond spent 47.8 percent of his work hours on land. Of the time spent on boats, YS estimates that 16.8 percent of Redmond's time was on YS-owned boats (with approximately half of that time spent navigating YS boats) and 35.4 percent of his time spent on client boats (with approximately half of that time spent navigating said boats). See Hessert Aff. Ex. 1 (ECF No. 52-1), PageID #s 466 & 470. By YS' estimation, Redmond spent only 25.8 percent of his YS time navigating boats "at sea." Hessert Aff. (ECF No. 52), PageID # 464. These disputed calculations create a genuine dispute of fact regarding how much time Redmond spent at sea while working for YS.

10

status are twofold." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). "First, . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." Id. (internal quotations and citations omitted). "Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Id.

This two-pronged inquiry creates "a mixed question of law and fact." Id. at 369. Thus, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a '[seaman]' it is a question for the jury." Id. at 369 (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)); see Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997) ("The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury.") Here, Defendant argues that Redmond cannot satisfy the second prong of the Chandris test as a matter of law. More specifically, Defendant questions whether Plaintiff has trialworthy evidence with respect to a qualifying "identifiable group of vessels" and argues that Redmond has an "inadequate temporal connection" to the required group of vessels. The Court considers each of these arguments in turn.

**A. Application of the Fleet Seaman Doctrine**

It is undisputed that Redmond cannot establish a connection to a *single* vessel in navigation. Thus, the Court considers Redmond's claim for seaman status under the Fleet Seaman Doctrine.[9]

---

[9] The Fleet Seamen Doctrine was implicitly endorsed by the Supreme Court in Harbor Tug. See 520 U.S. at 555-57. The doctrine has also been explicitly adopted by at least three the circuits. See St. Romain v. Indus. Fabrication & Repair Serv., Inc., 203 F.3d 376, 379 (5th Cir. 2000) (acknowledging that the Fifth Circuit has "previously . . . defined 'fleet' to mean 'an identifiable group of vessels acting together or under one control.'"); Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 152 (3d Cir. 1998); Gizoni v. Sw. Marine Inc., 56 F.3d 1138, 1141 (9th Cir. 1995)(noting that the Fleet Seaman Doctrine was "developed in the Fifth Circuit" and holding that "the fleet doctrine is a reasonable extension of Jones Act precedent") It appears the First Circuit has not had the occasion to consider adoption of this doctrine. But, in the absence of the First Circuit having adopted some alternative test since Harbor Tug, this Court finds the just cited cases from the Third, Fifth, and Ninth Circuit persuasive.

11

"[T]he Fleet Seaman Doctrine permits an employee to aggregate contacts with multiple vessels, [but] these contacts must have occurred with vessels owned or controlled by the same employer." Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 152 (3d Cir. 1998). Here, it is undisputed that YS owned two vessels, the Edgewater and the BAT boat. Redmond operated these boats on an almost daily basis.[10] However, it appears that these were generally short trips and frequently involved Redmond then boarding a client-owned vessel.[11] The Court has found no factually analogous Jones Act case that explains how the Court should classify the time when a mariner moves between an employer-owned vessel and a vessel that is clearly owned by a client of the employer.

In this case, YS has identified twenty-two vessels owned by YS clients that Redmond was assigned to work on at various times during his employment. Given YS' ability to compile such a list, the Court has no problem finding a potential "identifiable fleet." However, it is not apparent that YS *controlled* these client vessels, as required by the Fleet Seaman Doctrine. Likewise, the law on what "control" means not well developed.

To be clear, Plaintiff's record on this point is certainly trialworthy if "operational control" suffices. On many of the client-owned vessels, Redmond worked as a "captain" dispatched by YS. In that role, he arguably controlled the operation of the vessel as an agent of YS. In other instances, it appears Redmond was the only person on the vessel while working there. Thus, if

---

[10] While the precise breakdown of Redmond's time on various vessels is the subject of genuine dispute, Defendant admits for purposes of the pending motion that Redmond spent 89.7 hours on YS-owned vessels, which would amount to approximately 17.5 percent of his total hours worked during the Summer of 2014. See Ex. 1 to Hessert Aff., PageID # 470; see also Pl. Response (ECF No. 57), Page ID # 523 (explaining that the total number of hours worked by Redmond was 510.6 hours).

[11] Viewing the time sheets in the light most favorable to Redmond, it is far from clear that a factfinder would necessarily be required to divvy up Redmond's time in the manner Defendant has proposed in the Hessert spreadsheet. See supra note 11. By way of one example, Defendant asserts only 60 percent of the hour Redmond spent working on the Bit O Blue was spent on a YS-owned boat. However, Redmond testified that he only spent 10 minutes off of the YS boat and kept the YS boat tied to the mooring while he worked. See Redmond Dep., PageID # 255-56.

any person was to control the vessel at that time, it would have been Redmond. However, the Fifth Circuit has expressly declined to adopt an operational control test under the Fleet Doctrine. See St. Romain v. Indus. Fabrication & Repair Serv., Inc., 203 F.3d 376, 380 (5th Cir. 2000) (concluding that the "common control requirement" is not satisfied by "operational control"); see also Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir. 1986) ("By fleet we mean an identifiable group of vessels acting together or under one control.") While the Court believes St. Romain and Barrett are both factually distinguishable and not binding on this Court, the legal question of whether on the unique facts presented here any client-owned vessel may be considered under the Fleet Seaman Doctrine must be resolved on a fully developed factual record.

Notably, Defendant seeks to portray Redmond's "Captain's Days" as a "type of placement service." (Def. Motion (ECF No. 50), PageID # 452; Lawton Aff. (ECF No. 54), PageID # 477.) Generally, "a maritime agency which negotiates employment contracts and places seamen in shipboard niches cannot be deemed an 'employer' under the Jones Act." Heath v. Am. Sail Training Ass'n, 644 F. Supp. 1459, 1470 (D.R.I. 1986). The Court believes the overall circumstances of Redmond's YS employment take YS well outside "placement service" status. Nonetheless, in response to this argument, Plaintiff argues that Defendant's position in this regard creates additional trialworthy issues regarding how a factfinder might assess Redmond's substantial connection to YS-owned vessels. In particular, Plaintiff asserts issues regarding the durational aspect of Redmond's YS work, which the Court addresses more fully in the following section.

## B. Temporal Connection to the Identified Fleet of Vessels

"[S]eaman status is not *merely* a temporal concept, but . . . it necessarily includes a temporal element." Chandris, 515 U.S. at 371. In Chandris, the Supreme Court endorsed a thirty percent "cut off point" for determining whether a particular employee has the required substantial connection to qualifying vessels. Dorr v. Maine Mar. Acad., 670 A.2d 930, 934 (Me. 1996) ("A 'thirty percent rule' enables maritime employers and employees to determine their coverage pursuant to the Jones Act in the event of, and in advance of, an injury.") On the record presented, there is a clear factual dispute as to whether Redmond's vessel time at YS satisfies this thirty percent threshold.

Beyond the evidence a factfinder must weigh on this temporal element, the record as a whole presents a unique set of circumstances; many of which involve credibility determinations. Ultimately, the seaman inquiry is "focuse[d] on whether the worker derives his livelihood from sea-based activities" and asks "whether, in light of the totality of the circumstances, the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." Matter of Buchanan Marine, L.P., 874 F.3d 356, 365–66 (2d Cir. 2017) (affirming dismissal of Jones Act claim by a barge maintainer), cert. denied sub nom. Volk v. Franz, 138 S. Ct. 1442 (2018); see Zertuche v. Great Lakes Dredge & Dock Co., LLC, 2009 A.M.C. 297, 306 Fed. App'x 93, 95 (5th Cir. 2009) (explaining that "whether an employee is a seaman rather than just a land-based employee temporarily working aboard a vessel" involves consideration of "the total circumstances of an individual's employment"). Here, a factfinder could conclude that Redmond spent more than fifty percent of his tenure at YS engaged in classic seaman's work and exposed to the perils of the sea. Viewing the record in the light most favorable to Plaintiff, a factfinder might then additionally find Redmond had a substantial

connection, in terms of duration and nature, to an identifiable group of vessels that were subject to YS control.

Given this record, the Court concludes that there is trialworthy evidence on the question of Redmond's status as a Jones Act seaman. As a result, Defendant's request for summary judgment must be denied.

## V. CONCLUSION

For the reasons just stated, the Court hereby DENIES Defendant's Motion for Summary Judgment (ECF No. 50), as well as Plaintiff's Motion to Strike or Exclude the Affidavit of Anthony P. Hessert (ECF No. 55) and Plaintiff's Motion to Strike or Exclude the Affidavit of Vincent R. Jones (ECF No. 56).

In light of this ruling, this case shall be placed on the Court's next available civil trial list and any pre-trial motions shall, to the extent practicable, be filed prior to the final pretrial conference.

SO ORDERED.

                                                /s/ George Z. Singal
                                                United States District Judge

Dated this 13th day of May, 2019.